Melissa F. WEBER, Individually and as Parent and Natural Guardian of Dorsey Weber, a Minor, Plaintiff,

v.

CRANSTON PUBLIC SCHOOL COMMITTEE, Catherine Ciarlo, Individually and in her capacity as Superintendent, Cranston Public Schools, James Cofone, Individually and in his Capacity as Assistant Superintendent, Cranston Public Schools, and Peter McWalters, Individually and in his capacity as Commissioner of Rhode Island Department of Education, Defendants.

CA. 01–234–L.

United States District Court,
D. Rhode Island.

Feb. 6, 2003.

Melissa F. Weber, East Providence, RI, Pro se.

Keith B. Kyle, Esq., Wakefield, RI, Anne T. Turilli, Providence, RI, for Defendants.

## OPINION AND ORDER

LAGUEUX, Senior District Judge.

This matter is before the Court on plaintiffs' objection to a Report and Recommendation of Magistrate Judge Robert W. Lovegreen that recommended granting in part and denying in part defendants' motions to dismiss. As set forth below, the Court adopts the magistrate judge's recommended disposition but relies on slightly different grounds to reach that result.

## BACKGROUND

Magistrate Judge Lovegreen's report and recommendation contains a full recitation of the facts. For present purposes the following summary suffices.

Plaintiffs Melissa Weber ("Weber") and her daughter Dorsey Weber ("Dorsey," and collectively with Weber, the "Webers" or "Plaintiffs") formerly resided in the City of Cranston, Rhode Island, where, from 1993 through 1999, Weber enrolled Dorsey in the Cranston Public School System ("CPS").[1] Upon enrollment, CPS declared Dorsey eligible for special educational services pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1490. CPS premised her eligibility upon a determination that she suffered from neurological deficits that included graphomotor dyspraxia (which prevents her from performing penmanship), mild left hemispheric brain dysfunction, and attention deficit disorder.

---

1. Dorsey was a minor when Plaintiffs initiated this lawsuit. She turned eighteen in September, 2001.

In 1996, Weber revoked her consent to Dorsey's classification under IDEA and instead sought classification solely under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), which broadly prohibits discrimination on the basis of disability. CPS resisted the change, citing Dorsey's apparent success under the IDEA protocol, until 1998, when the parties agreed to declassify Dorsey under IDEA and establish a Section 504 plan to accommodate her educational needs. The record does not reveal how, if at all, the Section 504 plan differed substantively from Dorsey's previous IDEA plans.

Soon after the reclassification, in September of 1998, Weber challenged the efficacy and execution of the Section 504 plan. She complained that a computer provided to Dorsey as a note-taking aid contained malfunctioning components and was ill-equipped for its intended purpose. She was also dissatisfied with the process by which the school system implemented and evaluated Dorsey's plan. After a series of unsatisfactory meetings and communications with school officials, Weber requested a Section 504 due process hearing from CPS.

Defendant Catherine Ciarlo ("Ciarlo"), the superintendent of CPS, appointed defendant James Cofone ("Cofone"), the assistant superintendent, to preside over Weber's hearing, which took place June 21, 1999. Weber appeared with counsel and objected to certain procedural flaws. Specifically, Weber complained that Cofone's position with CPS rendered him ineligible to serve as an impartial hearing officer, in violation of the regulations implementing Section 504. Moreover, Weber alleged that Cofone failed to schedule the hearing in a timely manner, in contravention of school policy, and that the procedures improperly prohibited the creation of an audio or written transcript.

Also in June of 1999, Dorsey left the Cranston school system, after completing the eleventh grade. She independently worked towards and received Graduate Equivalency Diplomas in June of 2000 and currently attends Rhode Island College.

Without pressing the merits of her case before Cofone, Weber then filed a complaint against CPS with defendant Peter McWalters ("McWalters"), the Commissioner of the Rhode Island Department of Education ("RIDE"), pursuant to R.I. Gen. Laws § 42–87–5(c)(1998).[2] The complaint requested four years of compensatory education as relief for the alleged Section 504 violations. McWalters appointed a hearing officer, Paul Pontarelli ("Pontarelli"), who received evidence from the parties on five separate occasions between October 5, 1999 and March 22, 2000.

Finally, on May 1, 2001, Pontarelli issued a written decision, approved by McWalters, holding that while CPS violated Section 504 by failing to provide procedural safeguards, a grievance procedure and an impartial hearing officer, those violations did not deprive Dorsey of a free appropriate public education ("FAPE"). By way of relief the hearing officer ordered CPS to adopt clear and consistent

---

**2.** Section 42–87–5(c) provides:

The Rhode Island Department of Education is empowered to hear all complaints relating to violations of this chapter in the area of elementary and secondary education. Those complaints shall be heard in accordance with the process set forth in chapter 39 of title 16.

Chapter 87 prohibits discrimination against persons with disabilities, and includes in its definition of "discrimination" those acts prohibited by Section 504. *See* R.I. Gen. Laws § 42–87–1(2)(2001).

procedures for processing and hearing Section 504 grievances, and to provide ongoing Section 504 notice to parents and students, but declined to provide the compensatory education that the Webers sought.

Accompanying Pontarelli's written decision was a document entitled "Procedural Rules for Appeals From Decisions of the Commissioner," which detailed the manner in which a complainant could appeal to the Board of Regents for Elementary and Secondary Education (the "Board of Regents") from a decision of the Commissioner of Education.

Plaintiffs spurned that avenue of appeal, instead filing a complaint in this Court against CPS, Ciarlo, Cafone (collectively, the "Cranston Defendants") and McWalters (collectively, with the Cranston Defendants, "Defendants"). The complaint asserts three causes of action: 1) denial of procedural due process in violation of the fourteenth amendment to the United States' constitution (enforced via the conduit of 42 U.S.C. § 1983), Section 504 of the Rehabilitation Act, the Family Education Rights and Privacy Act (20 U.S.C. § 1232g)("FERPA"), and R.I. Gen. Laws § 42–87–2; 2) denial of a FAPE in violation of Section 504; and 3) discrimination in violation of Section 504.

■ The Defendants moved pursuant to Rules 12(b)(1) and 12(b)(6)to dismiss the complaint on the ground that Plaintiffs failed to exhaust their administrative remedies by not appealing McWalters' decision to the Board of Regents. Magistrate Judge Lovegreen recommended that this Court grant the motion with respect to all but the due process claims against CPS, Ciarlo and Cofone stemming from their failure to provide Weber access to Dorsey's educational records, and the due process claim against McWalters for rendering an untimely decision in the administrative action below.[3] Plaintiffs have objected to that recommendation.

## DISCUSSION

### I. Standard of Review

■ The district court conducts a de novo review of a magistrate judge's determinations with respect to dispositive pretrial motions. *See* Fed.R.Civ.P. 72(b). The court may accept, reject, or modify the magistrate judge's decision, receive additional evidence from the parties, or return the matter to the magistrate judge with further instructions. *See id.; see also* 28 U.S.C. § 636(b)(1)(2000). Merely relying on the magistrate judge's report and recommendation is impermissible; the district court must independently review and evaluate the evidence that the magistrate judge received. *See United States v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Gioiosa v. United States,* 684 F.2d 176, 178 (1st Cir.1982).

### II. The Statutory Scheme

Section 504 of the Rehabilitation Act of 1973 proscribes discrimination on the basis of disability by recipients of federal funds.[4]

---

**3.** The magistrate judge dismissed all counts related to FERPA on the grounds that no private right of action exists under that statute. Plaintiffs have not directly addressed that recommendation, choosing instead to focus solely on the question of exhaustion. In any event, objection to dismissal of the FERPA claim would be futile in light of the United States Supreme Court's recent ruling in *Gon-*

*zaga University v. Doe,* which expressly held that FERPA created no personal rights subject to enforcement through section 1983. 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).

**4.** The statute provides that:

[n]o otherwise qualified individual with a disability ... shall, solely by reason of his

*See* 29 U.S.C. § 794(a)(2000). Both CPS and RIDE receive federal funds and are subject to the statute's prohibition. In the academic arena, Section 504 complements the IDEA, which explicitly guarantees FAPE to disabled individuals. A review of the detailed IDEA permits a cogent discussion of Section 504's function as a supplemental balm for disabled students.

### IDEA

The IDEA establishes an elaborate scheme of identifying individuals with disabilities and ensuring that the responsible school authorities develop, in consultation with parents and students, an educational program for the student that accounts for and addresses that student's needs. *See Frazier v. Fairhaven School Committee,* 276 F.3d 52, 58 (1st Cir.2002). Among other things, the IDEA requires schools to give parents an opportunity to file complaints regarding "any matter relating to the identification, evaluation, or educational placement [of] ... or the provision of a free appropriate public education" to a disabled child. *See* 20 U.S.C. § 1415(b)(6)(2000). Parents who file such a complaint are entitled to an impartial due process hearing under the auspices of the state or local educational authority, at which the presiding hearing officer may not be an employee of the state or local educational authority. *See* 20 U.S.C. § 1415(f)(3). Upon pursuing all available avenues of appeal at the state level, parents may turn to the federal courts for relief. *See* 20 U.S.C. § 1415(i)(2)(A).

Most pertinent to the instant matter is section 1415(*l*), which reads in relevant part:

[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 790 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such law seeking relief that is also available under this subchapter, the procedures under subsections (f)and (g) of this section shall be exhausted to same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(*l*)(emphasis added).

Subsection (f) requires states to provide due process hearings to resolve complaints, while subsection (g) makes available appeals to the state educational agency from decisions resulting from those hearings. *See* 20 U.S.C. §§ 1415(f)-(g).

Section 1415(*l*) thus requires a putative plaintiff to exhaust state administrative remedies whenever that plaintiff seeks relief that is available under the IDEA, even if the complaint pleads a cause of action wholly based on a different statute. *See Frazier,* 276 F.3d at 59 (quoting *Rose v. Yeaw,* 214 F.3d 206, 210 (1st Cir.2000)). That mandate is eminently sensible. Requiring exhaustion properly funnels primary responsibility for educational decisions into the hands of those most qualified to make those decisions, namely the local school authorities. *See Frazier,* 276 F.3d at 60–61 (*citing Charlie F. v. Board of Educ.,* 98 F.3d 989, 992 (7th Cir.1996)). What is more, requiring complainants to take advantage of an existing administrative process yields a panoply of other benefits, not the least of which is the development of a full evidentiary record at the

or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any pro-

gram or activity receiving Federal financial assistance ...

29 U.S.C. § 794(a).

administrative level, promoting efficiency and judicial economy. *Id.* at 61; *see also McKart v. United States,* 395 U.S. 185, 193–195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

To be sure, the IDEA is not the exclusive avenue to redress injuries allegedly sustained by disabled students in the academic context. Congress made that clear by enacting Section 1415(*l*) in the wake of *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). In *Smith* the Supreme Court held that a plaintiff could not recover attorney's fees in a case grounded in the EHA (an earlier enactment of the IDEA), even though the plaintiff had also pleaded causes of action based on statutes that did permit the recovery of such fees. Because Congress had devised in the EHA such an intricate framework to address the education of disabled individuals, and did not provide for recovery of attorney's fees within that framework, the Court reasoned that those fees were unavailable in any action grounded in the EHA. *See Smith* at 1020–1021, 104 S.Ct. 3457.

Congress subsequently enacted section 1415(*l*) to emphasize that, contrary to *Smith,* the EHA did not restrict the "rights, procedures and remedies" available under, among other laws, the Rehabilitation Act. *See* 20 U.S.C. § 1415(*l*); *Weber v. Cranston School Committee,* 212 F.3d 41, 50 n. 9 (1st Cir.2000). The availability of concurrent relief pursuant to statutes other than the IDEA, however, does not override the IDEA's exhaustion requirement, which applies to all claims requesting relief that is available under the IDEA, whether or not they invoke that statute.

*Section 504*

In contrast to the IDEA's imposition of specific, affirmative obligations, Section 504 blankly forbids discrimination on the basis of disability in any context. It is a bludgeon to the IDEA's stiletto, protecting a broader swath of the population without describing a precise manner of compliance. Also in counterpoint to the IDEA, the Rehabilitation Act does not affirmatively require exhaustion of administrative remedies, having adopted the procedural requirements of Title VI of the Civil Rights Act, which generally does not call for exhaustion. *See Brennan v. King,* 139 F.3d 258, 268 n. 12 (1st Cir.1998).

Notwithstanding the differences between the two statutes, courts have recognized that in the context of education, Section 504's substantive requirements are largely derivative of the IDEA's. *See Smith,* 468 U.S. at 1017–18, 104 S.Ct. 3457; *Colin K. v. Schmidt,* 715 F.2d 1, 9 (1st Cir.1983). While Section 504 itself does not guarantee FAPE, its implementing regulations, promulgated by the Department of Health, Education and Welfare ("HEW")[5] contemporaneously with the IDEA's regulations, substantively track the text of the IDEA itself. *See Smith* at 1017 n. 20. The Section 504 regulations explicitly require recipients of federal funds to provide FAPE to disabled individuals. *See* 34 C.F.R. § 104.33(a)(2002). They go on to define an appropriate education as "the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandi-

---

5. HEW is the predecessor to the Department of Education. In 1979, HEW split up to become the Department of Education and the Department of Health and Human Services. *See Rogers v. Bennett,* 873 F.2d 1387, 1390 n.

3 (11th Cir.1989). HEW's responsibilities under the IDEA and the Rehabilitation Act shifted to the Department of Education. *See* 20 U.S.C. § 3441 (2000).

capped persons are met...." *See* 34 C.F.R. § 104.33(b).[6] That definition varies slightly from the IDEA's definition of FAPE. *See* 20 U.S.C. § 1401(8)(2000).[7]

The Section 504 regulations, like the IDEA, require the establishment of procedural mechanisms that protect the rights of students and parents to participate in and exert influence over the educational process. In relation to any action "regarding the identification, evaluation, or educational placement" of eligible individuals, parents must receive notice, an opportunity to examine relevant records, an impartial hearing in which the parents may participate and at which they may be represented by counsel, and a review procedure. *See* 34 C.F.R. 104.36 (2002). Compliance with the IDEA's procedural safeguards is one means of satisfying the Section 504 regulations. *See id.*

HEW imported the concept of FAPE in order to make the Rehabilitation Act, primarily aimed at vocational training for the disabled, applicable in the education context. *See Rogers v. Bennett*, 873 F.2d 1387, 1390 (11th Cir.1989). Neither party has attacked the validity of those regulations, which have generally withstood assault. *See, e.g., Association For Retarded Citizens In Colorado v. Frazier*, 517 F.Supp. 105, 122–23 (D.Colo.1981).

*Rhode Island Administrative Procedures*

Rhode Island law empowers the commissioner of elementary and secondary education to hear appeals from any decision of a school committee or to hear any appeal relating to any matter arising under the laws relating to schools or education. *See* R.I. Gen. Laws § 16–39–2 (2001). Furthermore, R.I. Gen. Laws § 42–87–5(c) directs the state department of education to take provenance over all complaints relating to discrimination on the basis of disability that occurs in the context of elementary and secondary education. *See* R.I. Gen. Laws § 42–87–5 (1998). All decisions of the commissioner of education "*shall* be subject to an appeal to and review by the board of regents for elementary and secondary education." *See* R.I. Gen. Laws § 16–39–3 (2002)(emphasis added).

Rhode Island has promulgated its own set of regulations implementing the IDEA that appear to be separate from the foregoing statutory procedures. *See* R.I.Code Reg. 08 010 002 (2002). The state has also apparently adopted a separate policy relating to Section 504, which has been a source of contention. Plaintiffs allege that multiple and conflicting Section 504 policies were in place in 1999, and that the resulting incoherence harmed them. Before the

---

**6.** The quoted subpart in full reads:

(B) Appropriate education. (1)For the purposes of this subpart, the provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36.

**7.** 20 U.S.C. § 1401(8) reads:

(8) Free Appropriate Public Education

The term "free appropriate public education" means special education and related services that-

(A) have been provided at public expense, under public supervision and direction, and without charge;

(B) meet the standards of the State educational agency;

(C) include an appropriate preschool, elementary, or secondary school education in the State involved; and

(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

magistrate judge, counsel for the Cranston Defendants orally acknowledged that contradictory policies existed at that time.

A letter from RIDE's legal counsel, appended to Plaintiffs' opposition to the motion to dismiss, suggests that in September of 1999 RIDE officially designated the procedures laid out in R.I. Gen. Laws 16–39 as the appropriate route for resolution of Section 504 claims.

## III. Analysis

*Exhaustion and Section 504 FAPE Claims*

■ Notwithstanding the absence of IDEA claims in the complaint, Defendants have moved to dismiss on the ground that the Plaintiffs failed to exhaust their administrative remedies at the state level. The Defendants argue that because another avenue of appeal was available to Plaintiffs, and was in fact mandatory under R.I. Gen. Laws section 16–39–3, Plaintiffs were required to pursue that appeal prior to filing suit in this Court.

Plaintiffs counter that the magistrate judge improperly applied the IDEA's exhaustion requirement, which they contend is inapplicable in this instance because CPS specifically declassified Dorsey under the IDEA, and she, therefore, was not subject to its mandates. Furthermore, they argue, exhaustion should be excused in Dorsey's case because the travel of the litigation indicates that resort to further state proceedings would be futile.

The magistrate judge did rely on section 1415(*l*) as grounds for dismissing Plaintiffs' claims, reasoning that the claims all related to an alleged denial of FAPE, which is relief available under the IDEA. Despite the fact that Dorsey was not receiving IDEA services during the relevant period, there is some support for the magistrate judge's recommendation.

The interplay of the IDEA and Section 504 is well-trodden ground, rehearsal of which is unnecessary for present purposes. Suffice it to say that when a plaintiff pleads Section 504 claims in concert with IDEA claims, requiring exhaustion of state administrative remedies is uncontroversial. *See, e.g., Frazier*, 276 F.3d 52; *Charlie F. v. Board of Educ.*, 98 F.3d 989, 991 (7th Cir.1996). In close cases, however, reconciling the requirements of the two statutes can be fraught with difficulty due to their similarities of purpose but discrepancies in coverage and design. *See Smith*, 468 U.S. 992, 1017–20, 104 S.Ct. 3457, 82 L.Ed.2d 746.

The First Circuit Court of Appeals has apparently not addressed the question of exhaustion in a FAPE suit where a student is receiving only Section 504 accommodations. Few courts have. Defendants rely on *Benik v. Lisle Community Unit School District # 202* to buttress their argument in support of requiring exhaustion even in the absence of IDEA claims. *See* No. 95 C 6392, 1999 U.S. Dist. LEXIS 3588 at 21–22 (N.D.Ill. March 16, 1999), *aff'd on other grounds* by 1999 WL 342501 (N.D.Ill. May 14, 1999).

In *Benik*, a magistrate judge recommended granting summary judgment to defendants in a Section 504 suit based on the plaintiffs' failure to exhaust their administrative remedies. The district court adopted that recommended result but specifically disavowed the exhaustion rationale, because the magistrate judge had raised it sua sponte. *See* 1999 WL 342501 at *3–4. Citing Seventh Circuit precedent, the district court held that failure to exhaust is not a jurisdictional flaw and therefore is subject to waiver by a party that fails to raise it. *See id.* For that reason, *Benik* is not particularly helpful.

More persuasive is the Eleventh Circuit's decision in *Babicz v. School Board of*

*Broward County,* 135 F.3d 1420 (11th Cir. 1998), *cert. denied,* 525 U.S. 816, 119 S.Ct. 53, 142 L.Ed.2d 41 (1998). In *Babicz,* the plaintiffs filed suit against their local school system for failing to provide adequate educational opportunities to their children, who suffered from, among other things, chronic asthma, allergies, and sinusitis. The complaint alleged violations of Section 1983, Section 504 and the Americans with Disabilities Act ("ADA"). The district court dismissed the suit for failure to exhaust their IDEA remedies, even though the plaintiffs' children were subject only to Section 504 and not the IDEA. Affirming, the Court of Appeals rejected the Babicz' contention that they were not seeking " 'relief that is available under' " the IDEA, and therefore were not bound by § 1415(*l* ). *See* 135 F.3d at 1422 n. 10.

Central to that disposition was the *Babicz* court's conclusion that the plaintiffs fell within the IDEA's definition of "children with disabilities," despite plaintiffs' argument that they did need not "special education," but only "related services." *Id.* By virtue of being "children with disabilities," then, the plaintiffs were subject to the exhaustion requirement.

Following the *Babicz* court's lead, the IDEA's definition also appears to encompass Dorsey, even though she was specifically removed from the umbrella of the IDEA services. However, no party to this action claims that IDEA administrative procedures were ever initiated or even appropriate. Non–IDEA procedures generally do not satisfy the IDEA's exhaustion requirement. *See Weber v. Cranston School Committee,* 212 F.3d at 53 ("The case law confirms that state and federal complaint procedures other than the IDEA due process hearing do not suffice for exhaustion purposes.").

Defendants seem to be asking the Court to conclude not that the IDEA required Plaintiffs to exhaust their IDEA administrative remedies, but that Section 504 itself independently requires exhaustion when a complainant alleges a denial of FAPE. There is merit to their suggestion.

Courts may require exhaustion of remedies even where a particular statute does not explicitly so provide. *See Patsy v. Board of Regents,* 457 U.S. 496, 501, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Statutory schemes that call for the establishment of administrative processes are particularly susceptible to judicial imposition of an exhaustion requirement. *See Ryans v. New Jersey Commission for the Blind and Visually Impaired,* 542 F.Supp. 841, 850 (D.N.J.1982). Requiring exhaustion effectuates congressional intent by funneling disputes through the process for which the legislature provided, instead of permitting an end run around that process to the courts.

The same considerations that underlie the IDEA's exhaustion requirement counsel imposing that requirement on Section 504 plaintiffs seeking redress for failure to provide FAPE. Local educational authorities are in a better position than a federal court, at least in the first instance, to determine whether a student has been deprived of the free appropriate public education that Section 504'S regulations guarantee. That determination requires an informed evaluation of the disabled student's accommodation plan, and the ability to recognize and remedy any deficiencies in that plan.

The portion of the complaint at issue here essentially details a disagreement over CPS' substantive and procedural implementation of Dorsey's Section 504 plan, which is the rightful province of the local and state school authorities. Plaintiffs participated willingly in the state administrative process that resulted in the commissioner's May 1, 2001 decision denying

them the compensatory education that they sought. That process included an ostensibly impartial hearing for which the Plaintiffs retained counsel and presented evidence. They concede that they were aware that an appeal of that decision to the Board of Regents was available, but instead chose to file a lawsuit in this Court. Because the purpose of requiring exhaustion in the IDEA context is equally applicable to the Section 504 FAPE context, relief for a violation of Section 504 relating to the denial of FAPE is only available in this Court upon utilization of all available state administrative procedures.[8] *See Rogers v. Bennett,* 873 F.2d at 1390.[9]

*Futility*

█ Finally, Plaintiffs argue that, in any event, they should not have been required to exhaust their state administrative options because to do so would have been futile. Exhaustion is indeed unnecessary if it would be futile or would result in irreparable harm to a plaintiff. *See Rose v. Yeaw,* 214 F.3d 206, 210–211 (1st Cir. 2000). Precisely how an appeal to the Board of Regents would have satisfied either of those requirements is less than clear, however.

The Webers chiefly complain about the amount of time that it took for McWalters' hearing officer to conduct the hearing and render a decision. Admittedly, that nearly fourteen months elapsed between the last evidentiary hearing and the date of the decision is troubling. However, there is no indication that an appeal to the Board of Regents would have consumed a similar amount of time, or that the Board of Regents was predisposed to deny Plaintiffs relief or without authority to grant it. Nor, most importantly, have Plaintiffs demonstrated that the delay prejudiced them or caused irreparable harm to Dorsey, who at the start of the commissioner's hearing had left CPS, and in fact not long thereafter began attending college.

Plaintiffs have also repeatedly claimed that even if they were subject to an exhaustion requirement, they satisfied it. To the extent that this Court can discern their reasoning, they contend that because Pontarelli found that some Section 504 violations had occurred, they were successful and did not need to appeal to the Board of Regents. Of course, that argument overlooks the fact that the hearing officer also found that the extent of the violations did

---

**8.** Defendants have moved to dismiss based on Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Magistrate Judge Lovegreen recommended granting the motion based on a lack of subject matter jurisdiction. At least one court of appeals has disputed the characterization of a failure to exhaust administrative remedies as a jurisdictional flaw. *See Charlie F.,* 98 F.3d 989, 991. (because failure to exhaust can usually be waived by defendants, it is not a jurisdictional issue); *but see Babicz,* 135 F.3d at 1421 (failure to exhaust deprives court of subject matter jurisdiction); *W.B. v. Matula,* 67 F.3d 484, 493 (3d Cir.1995)(same); *Hope v. Cortines,* 69 F.3d 687, 688 (2d Cir.1995)(affirming district court dismissal for lack of subject matter jurisdiction). The First Circuit does not appear to have squarely addressed the issue, and has affirmed dismissals based on both Rule 12(b)(6), *see Frazier,* 276 F.3d 52, and Rule 12(b)(1), *see Christopher W. v. Portsmouth*

*School Committee,* 877 F.2d 1089 (1st Cir. 1989).

**9.** In describing Section 504, the *Bennett* court wrote,

Two parallel procedures enforce these antidiscrimination regulations. First, parents are afforded certain procedural rights in a dispute with a local educational authority regarding the education of their handicapped children. *See id. § 104.36. Upon exhausting these procedures, aggrieved parents can take advantage of the remedial provisions of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d–1, 2000d–2 (1982), and bring suit in federal court to remedy the alleged violation of section 504. See 29 U.S.C. § 794(a)(2)(1982).*

873 F.2d at 1390 (emphasis added).

not amount to a denial of FAPE, clearly the heart of Plaintiffs' case.

At its core, their futility claim and the ancillary argument that they did actually exhaust their remedies comprise a substantive appeal of McWalters' refusal to award Plaintiffs the compensatory education they sought below. The appropriate forum for that appeal was before the Board of Regents, from whence the Plaintiffs could have come to this Court to prosecute their Section 504 FAPE claims if dissatisfied with that body's decision.

## CONCLUSION

For the foregoing reasons, this Court hereby adopts the magistrate judge's recommendation that defendants' motions to dismiss be granted with respect to: 1) the due process claims against CPS, Ciarlo, and Cofone for failure to provide information regarding procedural safeguards and for failure to conduct timely hearings; 2) the due process claim against McWalters for failure to provide a remedy at the administrative stage; 3) the claims for denial of FAPE against all defendants; and 4) the Section 504 discrimination claim against McWalters.

The following claims remain: 1) due process claims against CPS, Ciarlo and Cofone for failure to permit Weber access to Dorsey's records,[10] and 2) the due process claim against McWalters for failure to render a timely decision after the administrative hearing.

Judgment shall not enter until all claims are resolved.

It is so ordered.

10. As Magistrate Judge Lovegreen indicated, Plaintiffs have exhausted their state remedies with respect to this claim, having appealed an initial administrative decision to the Board of Regents.