Gayle **FITZPATRICK** and Charles Rankowski, Individually and as Parents of J.R., a Minor, Plaintiffs

v.

**TOWN OF FALMOUTH,**
**et al., Defendants**

No. CIV.04–45–P–H.

United States District Court, D. Maine.

April 30, 2004.

---

Ronald R. Coles, Law Office of Ronald R. Coles, Kennebunk, ME, for Charles A Rankowski, Gayle A Fitzpatrick, Plaintiffs.

Melissa A. Hewey, Drummond, Woodsum & MacMahon, Portland, ME, for Town of Falmouth, Barbara Powers, Steve Brinn, Timothy McCormack, Carolyn A Crowell, Defendants.

## MEMORANDUM DECISION AND ORDER ON MOTIONS

HORNBY, District Judge.

The plaintiffs seek a preliminary injunction and the defendants seek dismissal of this lawsuit involving denial of playground privileges to a home-schooled autistic child. Because I cannot determine from the pleadings whether the plaintiffs should be required to exhaust their administrative remedies first, I rule on only some of the issues raised and direct oral argument on the remainder.

### FACTS

According to their Amended Complaint, the plaintiffs in this lawsuit are parents and their nine-year-old son who reside in Falmouth, Maine. The child "suffers from a neurological disability and handicap know[n] as Asperger's Disorder Autism." Am. Compl. ¶7 (Docket Item 18). Assertedly, "[h]e is always, at all times, under the direct supervision of at least one adult." *Id.* The parents are home-schooling their son. *Id.*

For two years, this home-schooled child was allowed to play in and use the playground at the Town of Falmouth's Plummer Motz/Lunt School during the same hours that enrolled children played there. *See id.* ¶9. The plaintiffs say that beginning in September, 2003, however, the

school's administrators "performed, documented, conspired in, allowed to occur, and/or otherwise participated in snooping surveillance of [the child] at said playground without informing plaintiffs herein of said surveillance." *Id.* ¶ 10. They also maintain that school authorities falsely told the parents "that no snooping surveillance and documentation ... was occurring." *Id.* ¶ 11. Then, on November 7, 2003, according to the plaintiffs, the "defendants arbitrarily and with intent to discriminate towards handicapped children, suspended [his] use of said playground during school hours." *Id.* ¶ 12. The child has not used the playground since, and the plaintiffs have been "informed by defendant Town of Falmouth that such use would lead to criminal arrest for trespass by the Falmouth Police Department." *Id.*

The plaintiffs filed this lawsuit in state court, naming as defendants the School Principal, the School Department's Director of Special Services, the School Superintendent, the Chair of the School Board, and the Town itself. They seek injunctive relief to end the termination of playground privileges, attorney fees and costs.[1] The defendants removed the case to federal court under 28 U.S.C. § 1331 because of the federal questions presented.

The plaintiffs make federal claims under:

- 42 U.S.C. § 1983 (Count IV)
- 42 U.S.C. § 1985(3) (Count V)
- 42 U.S.C. § 1986 (Count VI)
- Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* (Count VII)
- Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) (Count VIII)
- Equal protection clause of the U.S. Constitution (Count IX)

They also make three state claims under the Maine Human Rights Act:

- 5 M.R.S.A. § 4601 (Count I)
- 5 M.R.S.A. § 4684–A (Count II)
- 5 M.R.S.A. § 4592 (Count III)

## ANALYSIS

The defendants argue that all the plaintiffs' claims lack substance, and that the entire lawsuit should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.[2] Much additional information about the underlying dispute is contained in papers accompanying and responding to the plaintiffs' motion for a preliminary injunction, but the defendants have filed a simple 12(b)(6) motion for failure to state a claim.

1. In their motion papers, the plaintiffs "reemphasize" that they seek no money damages. Pls.' Mem. in Opp'n to Mot. to Dismiss at 2 (Docket Item 12). The defendants accuse them of continuing to request money damages in their Amended Complaint, Defs.' Supplement Mot. to Dismiss at 1 n. 1 ("Defs.' Supp. Mot. to Dismiss") (Docket Item 16), but I do not see such a request. The plaintiffs do allege that they were damaged by the defendants' conduct, but their prayer for relief in each count is limited to injunctive relief, attorney fees and costs. On the other hand, they demand a jury trial, not available to them if they seek only equitable relief.

2. I decline the plaintiffs' suggestion that I take judicial notice of "the following facts; Plaintiff's son [ ], is designated as being in the 4th grade at the Plummer Motz/Lunt school, but is home schooled. That school only runs to grade 4, and has the playground at issue. The school year ends in mid June, 2004. In September, 2004, [plaintiffs' son] will be advanced to the Falmouth Middle School, grades 5 through 8; the Middle School does not have a playground per se, only athletic fields." Pls.' Mem. in Opp'n to Mot. to Dismiss at 1–2. Those are not matters appropriate for judicial notice under Fed.R.Evid. 201, and this is a 12(b)(6) motion that tests the adequacy of the allegations of the Amended Complaint.

They do not rely on any information outside the Amended Complaint. I confine myself, therefore, to the allegations of the Amended Complaint, except with respect to the issue of exhaustion of administrative remedies where I invite more information, as described below.

### A. Federal Claims

■■■ In seeking dismissal, the defendants rely upon First Circuit cases that require, in order to sustain a federal civil rights claim, more detail than the plaintiffs provide here. But the United States Supreme Court has authoritatively declared more lenient standards for reviewing a complaint attacked under Fed R. Civ. P. 12(b)(6), and I must follow its directions. In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), a 2002 case that neither side cites, the Court said:

> Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."

*Id.* at 514, 122 S.Ct. 992 (citation omitted). Here the plaintiffs assert that school officials excluded this child from playground privileges "with the intent to discriminate towards handicapped children." Am.

Compl. ¶ 12. The defendants disagree with that assertion, of course, and may or may not turn out ultimately to be correct, but the Amended Complaint meets the *Swierkiewicz* standard of giving "fair notice of what [the] claims are and the grounds upon which they rest." 534 U.S. at 514, 122 S.Ct. 992 (citation omitted). As *Swierkiewicz* said, "it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.* at 515, 122 S.Ct. 992 (citation omitted). Indeed, the plaintiffs' allegation of discriminatory intent may be a "speculative and nebulous legal conclusion," Defs.' Supp. Mot. to Dismiss at 2, but as Judge Singal of this court recently noted, "*Swierkiewicz* clearly indicates that it is not fatal to Plaintiff's case that some of his allegations at this stage may be legal conclusions rather than facts." *Greenier v. Pace, Local No. 1188,* 201 F.Supp.2d 172, 177 (D.Me.2002).[3] The allegations here, though sometimes confusing,[4] are sufficient in their substantive content to withstand the motion to dismiss for failure to state a claim of intentional and invidious discrimination under the equal protection clause (Count IX: "defendants' conduct creates and implements different standards, conditions and education of handicapped children when contrasted to non-

3. According to *Swierkiewicz*, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56." 534 U.S. at 514, 122 S.Ct. 992.

4. For example, the Amended Complaint asserts that this "home-schooled child" "has the inherent right to interact and play with other children at said playground," Am. Compl. ¶ 13, and that the defendants have denied this voluntarily home-schooled child "the guarantee that he . . . is to be fully integrated into the

public schools." *Id.* ¶ 15. The breadth of these assertions is inconsistent with the very premise of home-schooling. Given the fact that this child is home-schooled, it is also confusing for the plaintiffs' opposition memorandum to speak of the school administrators as causing the child "to be isolated from his *classmates*," to refer to the "proposition that *in any school*, playground play is crucial to the development of a child, normal or handicapped," and to announce that "handicapped and non handicapped students should, whenever possible, *be educated together*." Pls.' Mem. in Opp'n to Mot. to Dismiss at 3 (emphasis added).

handicapped children." Am. Compl. ¶ 34). They are also sufficient to state a claim under 42 U.S.C. § 1983 (Count IV: asking the court to prohibit "defendants' conduct in deprivation of [the child's] civil rights to be free of discrimination in education").[5]

◼ Count VIII purports to state a claim under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). That statute applies only to entities receiving federal funds, *see id.,* and the plaintiffs have not alleged that these defendants receive federal funds.[6] Nevertheless, the defendants have not challenged this omission (perhaps their knowledge of their source of funds makes it futile) and I therefore do not rely upon it. Instead, the defendants argue that the plaintiffs' allegations are not sufficient to make out actionable discrimination based upon disability. Given the Supreme Court's liberal pleading standards that I have described, the defendants are incorrect.[7]

◼ Counts V and VI invoke the conspiracy prohibitions of the Civil Rights Act of 1871 sections 2 and 6, 17 Stat. 13, 15, amended and codified as 42 U.S.C. §§ 1985(3), 1986. There is disagreement among the Circuits as to whether they cover disability discrimination, *compare*

*Larson v. Miller,* 55 F.3d 1343, 1352–53 (8th Cir.1995) (extending section 1985(3) protections to disabled persons as a class); *People of New York v. 11 Cornwell Co.,* 695 F.2d 34, 43 (2d Cir.1982) (same) *with D'Amato v. Wis. Gas Co.,* 760 F.2d 1474, 1486–87 (7th Cir.1985) (holding that the disabled are not a class receiving protection under section 1985(3)); *Wilhelm v. Cont'l Title Co.,* 720 F.2d 1173, 1177 (10th Cir.1983) (same), and the First Circuit has not yet spoken. *Downs v. Sawtelle,* 574 F.2d 1, 16 (1st Cir.1978). *See also W.B. v. Matula,* 67 F.3d 484, 503 n. 15 (3d Cir. 1995). I follow the reasoning of the Second and Eighth Circuits in recognizing coverage. Once again, therefore, the allegations are sufficient in substance.[8]

◼ Count VII purports to state a claim under the IDEA. In response, the defendants point me to a Ninth Circuit statement that "[n]othing in the language of the IDEA provides services for children who are not enrolled in a school, however 'school' is defined." *Hooks v. Clark County Sch. Dist.,* 228 F.3d 1036, 1039 (9th Cir.2000). On their part, the plaintiffs point to no authority in the statutes or cases to support their claim of IDEA coverage for a home-schooled student. Maine statutes, however, provide that "[a] stu-

---

**5.** Count IV does confuse the issue by also referring to the child's "civil right to use the playground," Am. Compl. ¶ 23, a problematic assertion especially for a home-schooled child, but the claim of discrimination is sufficient.

**6.** It is not sufficient to say, as the plaintiffs do in their opposition to the motion to dismiss, that "Discovery, in the present case, will flush out any Federal monies flowing to the Falmouth School Department." Pls.' Mem. in Opp'n to Mot. to Dismiss at 4.

**7.** It is implicit that the plaintiffs claim the child is "qualified" within the meaning of section 504 (a requirement that does not explicitly apply to the other federal claims).

**8.** The parties have not addressed the issue whether sections 1985 and 1986 allow an injunctive remedy, the relief sought here. The United States Supreme Court explicitly chose not to address that issue in 1993. *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 285 n. 16, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) ("Because of our disposition of this case, we need not address whether the District Court erred by issuing an injunction, despite the language in § 1985(3) authorizing only 'an action for the recovery of damages occasioned by such injury or deprivation.'"); *accord People of New York v. Terry,* 45 F.3d 17, 23 (2d Cir.1995) (expressly declining to address whether section 1985(3) supports injunctive relief).

dent receiving home-school instruction is eligible for special education services, as provided under federal regulations...." 20–A M.R.S.A. § 5021(3). (Neither side referred me to that Maine statute.) The IDEA recognizes that "special education" can include instruction "in the home" and "in other settings." 20 U.S.C. § 1401(25)(A) (2002). *See also* 34 C.F.R. § 300.26(a)(1)(i) [9]; 4 James A. Rapp, *Education Law* § 10.03[12][g][vii]. Given the federal and state statutory language and the Ninth's Circuit's recognition that the IDEA permits the states to define what is a "school," *Hooks*, 228 F.3d at 1040, I conclude that a Maine home-schooled student can state an IDEA claim.[10]

In addressing the IDEA claim, however, I choose to repeat at length what the First Circuit has said about the IDEA, because it affects so strongly the relief available in this federal court. In a 2000 opinion, the First Circuit stated:

> IDEA is a comprehensive education statute which seeks to ensure that children with disabilities receive "a free appropriate public education ... designed to meet their unique needs." IDEA requires state or local agencies receiving federal funds under subchapter II of

IDEA to "establish and maintain procedures ... to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies." If parents or guardians believe that the state or local agencies are not performing properly, they may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." A parent who files a complaint has the right to an "impartial due process hearing" conducted by either the state or local educational agency.

> If the complainant remains dissatisfied after a due process hearing, he or she may file a civil action in state or federal court. *Before filing suit, however, IDEA mandates that plaintiffs exhaust administrative remedies through the due process hearing. This requirement applies even when the suit is brought pursuant to a different statute so long as the party is seeking relief that is available under subchapter II of IDEA....*

---

9. Maine has developed regulations to deal with the relationship between special education services and home-schooling. *See* Me. Dep't of Educ., 05–071 CMR 101–4.

10. The nature of the plaintiffs' IDEA claim, however, is certainly unclear at this stage and may require a more definitive statement or discovery to clarify it. The materials outside the Amended Complaint suggest that this home-schooled student had a Pupil Evaluation Team ("PET"), but I see no reference to an Individualized Education Plan ("IEP"). There is some suggestion that he is receiving certain evaluation services from the school, but it is not clear to me whether his playground privileges are part of his education plan, *see* n. 11, *infra,* or merely a right to use the public school playground that he shares with all home-schooled students, disabled or

not. It is at least challenging to square home-schooling with the plaintiffs' assertion that the defendants are obliged "to provide all disabled children a full appropriate, meaningful and accessible public education and related services" and "to educate handicapped children with non-handicapped children whenever possible." Am. Compl. ¶ 29. I remain perplexed, therefore, whether he is making an IDEA claim for special services, or merely claiming discrimination, or both. The only judicial remedy the IDEA creates for a private party, 20 U.S.C. § 1415(i), is the judicial review of a placement in an alternative education setting, 20 U.S.C. § 1415(k) (apparently inapplicable here), or of an administrative due process hearing, 20 U.S.C. § 1415(f), or of an appeal from such a hearing, 20 U.S.C. § 1415(g).

*The purpose of exhaustion is to "en-able[ ] the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."*

*Rose v. Yeaw,* 214 F.3d 206, 209–10 (1st Cir.2000) (citations omitted) (emphasis added).

Here, the plaintiffs have failed to allege in their Amended Complaint that they have exhausted the administrative remedies the IDEA provides.[11] As *Rose v.Yeaw* holds, exhaustion of administrative remedies is a prerequisite under the IDEA to bringing suit, *accord Weber v. Cranston Pub. Sch. Comm.,* 245 F.Supp.2d 401, 405 (D.R.I.2003). On this topic of exhaustion, the plaintiffs offer only a statement by the late Judge Brody of this District that "[e]xhaustion may not be required where the pursuit of administrative remedies would be futile or inadequate; waste resources, and work severe or irreparable harm on the litigant; or when the issues raised involve purely legal issues." *Ciresoli v. M.S.A.D. No. 22,* 901 F.Supp. 378, 385 (D.Me.1995) (citations omitted). They have made no allegation in their Amended Complaint that pursuing their administrative remedies would meet any of the standards described by Judge Brody.

The plaintiffs do make clear in other papers, however, that given the ending of the school year in June and their assertion that the child will be associated with another school in the next school year, they believe the administrative process would take too long to give effective relief.[12] Since the plaintiffs could amend their complaint once again, I shall proceed for the moment as if they had made those assertions of futility, inadequacy and irreparable injury in their Amended Complaint. (The other exceptions mentioned by Judge Brody—"purely legal issues" or a "waste [of] resources"—obviously do not apply.)

It is true that exhaustion is excused "if it would be futile or would result in irreparable harm to a plaintiff." *Weber,* 245 F.Supp.2d at 410 (citing *Rose v. Yeaw,* 214 F.3d at 210–11). *See also Frazier,* 276 F.3d at 59 (citations omitted). So far as futility and inadequacy are concerned, I observe first that the circumstances of this

---

11. Instead, the plaintiffs' affidavit and exhibits reveal that on September 11, 2003, a PET program review meeting was held to evaluate the child's continuing status as a home-schooled student and that at that meeting continued use of the school playground without limitations was approved by the PET. After the November 7, 2003, suspension of playground privileges, another PET meeting occurred on November 24, 2003, at which the parents disagreed with the continued suspension. School officials "suggest that another PET meeting should be held to 'discuss the matter,' and to 'file appeals' from the outcome." Aff. of Gayle A. Fitzpatrick as Supplemental and in Reply to Defs.' Opp'n to Pls.' Mot. ¶ 4 (Docket Item 11). The plaintiffs also provide a letter from the Director of Special Services stating that at the November 24 meeting the school officials offered to have a school psychologist and others conduct a functional behavior assessment with the child on the playground and that the parents refused to consent to the assessment. Pls.' Mem. in Opp'n to Defs.' Supplement Mot. to Dismiss and in Opp'n to Defs.' Mot. to Dismiss Am. Compl., Ex. A ("Pls.' Mem. in Opp'n to Defs.' Supp. Mot. to Dismiss") (Docket Item 21). The materials provided by the plaintiffs make clear that administrative remedies are available.

12. "Defendants know that an appeal under IDEA only to the Education Department, State of Maine administrative appeals takes 4–5 months." Pls.' Supplemental Aff. to Defs.' Mot. to Dismiss Am. Compl. ("Pls.' Supp. Aff.") ¶ 2 (Docket Item 22). *See also* Pls.' Mem. in Opp'n to Defs.' Supp. Mot. to Dismiss at 2–3.

home-schooled child's interactions on the playground and the reasons for the school administrators' actions are obviously fact-intensive and deserving of the careful consideration that the IDEA administrative procedures make available. Educational authorities are in a better position than a federal judge to make the first review of whether this home-schooled autistic child is receiving appropriate treatment in the denial of playground privileges. It is not clear to me why at the time of the November 7 decision to terminate playground privileges an immediate administrative appeal would have been futile or inadequate.

On the subject of irreparable harm, the First Circuit has said that "[t]he exception for irreparable harm 'is to be sparingly invoked,'" *Rose v. Yeaw*, 214 F.3d at 212 (citation omitted), and seems to have approved the Third Circuit's approach of requiring "affidavits from competent professionals along with other hard evidence that the child faces irreversible damage if the relief is not granted." *Id.* (citing *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 779 (3d Cir.1994)). In this case, I am given no reason why an administrative appeal in November would have created irreparable harm to this child.

As both *Rose v. Yeaw* and *Weber* point out, moreover, the IDEA exhaustion requirement goes far beyond the IDEA to encompass claims under other federal laws protecting the rights of children with disabilities. Specifically:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(1) (emphasis added). As *Weber* states, "The availability of concurrent relief pursuant to statutes other than the IDEA ... does not override the IDEA's exhaustion requirement, *which applies to all claims requesting relief that is available under the IDEA, whether or not they invoke that statute.*" 245 F.Supp.2d at 406 (emphasis added).[13] On this premise, in *Babicz v. Sch. Bd. of Broward County*, 135 F.3d 1420 (11th Cir.1998), the court dismissed claims under section 1983, the ADA and section 504 for failure to exhaust administrative remedies.[14]

But the plaintiffs argue that they are not required to exhaust their administrative remedies because they are seeking no money damages. They cite *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52 (1st Cir.2002). It is true that *Frazier* was a money damages case and that it required exhaustion as a precondition to seeking money damages. There is no suggestion in *Frazier*, however, that exhaustion is not required for injunctive relief as well. Indeed, the dispute in *Frazier* was over the notion that money damages, *unlike injunctive relief,* might escape the administrative exhaustion requirement. The First

13. This may even be a subject matter jurisdiction issue. *See Weber*, 245 F.Supp.2d at 410 n. 8, describing the split of authority.

14. On section 504 claims, the *Weber* court said: "Suffice it to say that when a plaintiff pleads Section 504 claims in concert with IDEA claims, requiring exhaustion of state administrative remedies is uncontroversial." 245 F.Supp.2d at 408 (citation omitted).

Circuit firmly rejected that notion. The policy reasons behind the administrative exhaustion requirements are even stronger in the context of a request for injunctive relief. As the *Frazier* court stated:

> [W]e think that it is useful to reflect upon the general rationale that underlies exhaustion requirements in administrative regimes:
>
>> In the administrative state, exhaustion of administrative remedies is generally required. This requirement is more than a matter of form. Insisting on exhaustion forces parties to take administrative proceedings seriously, allows administrative agencies an opportunity to correct their own errors, and potentially avoids the need for judicial involvement altogether.

The IDEA fits comfortably into this general pattern. Congress constructed the law on the premise that plaintiffs would be "required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities." That makes sense because exhaustion "enables the [educational] agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."

Indeed, special benefits adhere to the exhaustion requirement in the IDEA context. The IDEA's administrative machinery places those with specialized knowledge—education professionals—at the center of the decisionmaking process, entrusting to them the initial evaluation of whether a disabled student is receiving a free, appropriate public education. . . .

> . . . .[T]he provision of judicial review is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." . . . Allowing plaintiffs to bypass the IDEA's administrative process en route to state or federal court disrupts this carefully calibrated balance and shifts the burden of factfinding from the educational specialists to the judiciary. That phenomenon is directly at odds with the method of the IDEA: "[t]o allow parents to come directly to federal courts will render the entire scheme [of the IDEA] nugatory."

276 F.3d at 60–61 (citations omitted).

 Therefore, despite my rulings that the substantive allegations of the Amended Complaint are sufficient to state federal discrimination claims under the *Swierkiewicz* standard, all these federal claims may be subject to dismissal for failure to exhaust administrative remedies, if the relief sought is available under the IDEA. I request oral argument on this issue, and defer ruling on the motion to dismiss the federal claims until I have heard argument.[15]

### B. State Claims

 Count I seeks to state a claim under the first section of the Maine Human Rights Act that deals with educational opportunity, 5 M.R.S.A. § 4601. That section recognizes as a civil right "the opportunity for an individual *at an educational*

---

**15.** The plaintiffs' supplemental affidavit refers to the Family Educational Rights and Privacy Act ("FERPA"). I ignore the reference. It is not pleaded in the Amended Complaint and there is no private cause of action under FERPA. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 69–70 (1st Cir.2002); *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 786 (2d Cir.2002).

*institution* to participate in all educational, counseling and vocational guidance programs ... without discrimination because of ... a physical or mental disability." 5 M.R.S.A. § 4601 (emphasis added). But the section does not create a private cause of action. Enforcement of the right must be sought elsewhere in the statute. Section 4602(2), for example, prohibits unlawful educational discrimination solely on the basis of physical or mental disability, but states: "Nothing in this subsection may be construed to cover the rights of exceptional students to special education programs under state or federal law." The parties have not cited this latter provision, let alone tried to describe its significance. I have serious doubt that this home-schooled child qualifies as an "individual at an educational institution" within the meaning of section 4601 or that the defendants' actions can be characterized as denying him the opportunity "to participate in ... educational, counseling and vocational guidance programs" at the school. This is a state law claim, however; the issues have not been well briefed; and I do not want to interpret the state statute without better argument.

■ In Count II, the plaintiffs claim that the alleged threat of arrest if the child visits the playground during school hours violates 5 M.R.S.A. § 4684–A. Am. Compl. ¶ 19. What the plain language of section 4684–A protects, however, is the right of a disabled person to engage in lawful activities without fear that *someone*

*else* will trespass on property because of his physical or mental disability.[16] It does not protect the disabled person who is engaging in a lawful activity against the threat of *arrest* for trespass. The motion to dismiss Count II is GRANTED.

■ In Count III, the plaintiffs assert that the school playground is a place of public accommodation and that the termination of the child's use of the playground "due to his neurological disability and handicap" violates 5 M.R.S.A. § 4592.[17] Am. Compl. ¶ 21. Under 5 M.R.S.A. § 4553(8)(J), a school is a place of public accommodation. Section 4592 makes it unlawful for a public accommodation to "directly or indirectly refuse, discriminate against or in any manner withhold from or deny the full and equal enjoyment to any person, on account of ... physical or mental disability ... any of the ... facilities, ... services or privileges of public accommodation, or in any manner discriminate against any person in the ... terms or conditions upon which access ... may depend." 5 M.R.S.A. § 4592(1). Likewise, it prohibits "[a] qualified individual with a disability, by reason of the disability, being excluded from participation in or being denied the benefits of the services, programs or activities of a public entity, or being subjected to discrimination by any such entity." 5 M.R.S.A. § 4592(1)(E). For the reasons stated in analyzing the federal claims, I conclude that the plaintiffs' assertions of discrimination are sufficient to withstand

16. "[A] person has the right to engage in lawful activities without being subject to physical force or violence, damage or destruction of property, trespass on property or the threat of physical force or violence, damage or destruction of property or trespass on property motivated by reason of race, color, religion, sex, ancestry, national origin, physical or mental disability or sexual orientation." 5 M.R.S.A. § 4684–A.

17. That section opens with the proviso that it "does not require an entity to permit an individual to participate in or benefit from the ... facilities ... of that entity when the individual poses a direct threat to the ... safety of others." This seems to be an affirmative defense, and the defendants have not raised it since they have not yet answered the complaint.

the defendants' motion to dismiss. Unlike the federal claims, the state claims are not subject to an exhaustion requirement. The motion to dismiss Count III is therefore DENIED.

### CONCLUSION

The motion to dismiss Count II is GRANTED; the motion to dismiss Count III is DENIED. Ruling is deferred on all other counts of the motion to dismiss. I invite oral argument on the issues I have raised in this Order, so that the parties can be heard fully. This will be legal argument only, except that I will entertain evidentiary submissions on the exhaustion issue.

I also defer action on the plaintiffs' request for a hearing on their preliminary injunction motion. It is premature to hold an evidentiary hearing on that motion until I determine whether the case can go forward in this court.

After I hear argument, I will decide whether the federal claims are subject to dismissal. If they are, I will consider remanding the remaining state claims to state court since they involve a novel application of state laws. Counsel may also address this topic at oral argument if they choose.

The plaintiffs' request for sanctions is DENIED.

So ORDERED.