Gayle **FITZPATRICK** and Charles Rankowski, Individually and as Parents of J.R., a Minor, Plaintiffs

v.

**TOWN OF FALMOUTH,** et al., Defendants

No. CIV.04–45–P–H.

United States District Court, D. Maine.

May 7, 2004.

---

Ronald R. Coles, Kennebunk, ME, for Gayle Fitzpatrick and Charles Rankowski, Individually and as Parents Of J.R., a Minor, Plaintiffs.

Melissa A. Hewey, Drummond, Woodsum & MacMahon, Portland, ME, for Town of Falmouth, Steven Brinn, as Chairman of the Falmouth School Board, Timothy McCormack, Carolyn A Crowell and Barbara Powers, Individually and as Employees of the Falmouth Public Schools, Defendants.

## MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS

HORNBY, District Judge.

I held oral argument on May 6, 2004, to hear the parties' responses to my Order of April 30, 2004, concerning the defendants' motion to dismiss. At that time, the lawyers helpfully clarified the issues in this complicated area where home schooling intersects with the federal Individuals with Disabilities Education Act ("IDEA"). I now GRANT the defendants' motion to dismiss all the federal claims, and REMAND the remaining state law claims (Counts I and III) to state court.

The parents of this autistic nine-year-old obviously care very deeply about their son and his educational and social development. They truly believe that he has been discriminated against, because of his disability, in the withdrawal of playground privileges at Falmouth's Plummer–Motz/ Lunt School, privileges they consider essential to his social development. The municipal and school officials in turn defend their decision as not discriminatory, but based upon their responsibility to all the children using the playground. I know that it will be frustrating to the parents that I decline to resolve this factual dispute. But judges have limited powers. It is important to be faithful to those limitations in a democracy. Here, the IDEA specifies that before filing a lawsuit under any federal law that protects the rights of children with disabilities, a plaintiff must first exhaust the administrative remedies that the IDEA provides, at least if the relief requested is also available under the IDEA. Those conditions are satisfied here, but the plaintiffs have failed to exhaust their administrative remedies. I must therefore dismiss the federal claims. Without the federal claims, it is appropriate to remand the remaining state law issues to the state court from which this case was removed.

### FACTS

Most of the relevant allegations about this voluntarily home-schooled child, his use of the public school playground, and the suspension of those privileges last November, are described in my earlier order of April 30, 2004. *See Fitzpatrick v. Town*

*of Falmouth,* 321 F.Supp.2d 119, 119–123 (D.Me.2004). At that time, I invited evidentiary submissions on the question whether the plaintiffs had exhausted available administrative remedies to challenge the suspension. The school officials filed an affidavit with attached documents, and at the hearing the parents submitted two letters. From those documents, as well as uncontested statements at oral argument, I find the following facts concerning the exhaustion requirement.

This home-schooled autistic child did have a Pupil Evaluation Team ("PET") at the Plummer–Motz/Lunt School, but did not have an Individualized Education Program ("IEP") as federal and state law uses those terms. A PET program meeting on September 11, 2003, attended by the mother approved the child's use of the school playground. *See* Aff. of Gayle A. Fitzpatrick as Supplemental and in Reply to Defs.' Opp'n to Pls.' Mot. ("Fitzpatrick Aff."), Ex. A, Pupil Evaluation Team Minutes of 9/11/03 (Docket Item 11) ("Playground use approved."); Aff. of Carolyn Crowell on Issue of Exhaustion ("Crowell Aff.") ¶ 4 and Ex. 2 (Docket Item 27). On November 7, 2003, school officials suspended playground privileges. *See* Fitzpatrick Aff. ¶ 2; Ex. D, Letter from Crowell to Fitzpatrick of 11/7/03 (Docket Item 6).

At a subsequent PET meeting on November 24, 2003, attended by the mother and a lawyer, school officials described incidents of inappropriate behavior on the playground and stated that it would be necessary to develop a behavior management plan. *See* Fitzpatrick Aff., Ex. B, Pupil Evaluation Team Minutes of 11/24/03; Crowell Aff. ¶ 9. The Special Services Director recommended that a functional behavior assessment be completed on the plaintiffs' son, *see* Fitzpatrick Aff., Ex. B, Pupil Evaluation Team Minutes of 11/24/03; Crowell Aff. ¶ 10, a request that the plaintiffs declined. *See* Fitzpatrick Aff., Ex. B, Letter from Fitzpatrick to Crowell of 12/4/03. The plaintiffs previously had received a copy of the Maine Special Education Regulations procedural safeguards.[1] Pls.' Mem. in Opp'n to Defs.' Supplement Mot. to Dismiss and in Opp'n to Defs.' Mot. to Dismiss Am. Compl., Ex. A (Docket Item 21).

My Order of April 30, 2004, discussed the IDEA claim (then Count VII of the First Amended Complaint), the absence of a request for damages and the demand for a jury trial. The IDEA was the source of the defendants' argument that the plaintiffs must first exhaust administrative remedies before suing on their federal claims. Since then, the plaintiffs have filed, without objection, a Second Amended Complaint that drops the IDEA claim altogether, adds claims for money damages and drops the request for jury trial.

### ANALYSIS

At oral argument, the plaintiffs stated that their primary claims are disability discrimination claims under the federal civil rights laws, 42 U.S.C. §§ 1983, 1985,

---

1. The letters provided by the plaintiffs at oral argument shed little light on what administrative remedies plaintiffs were told were available. The plaintiffs wrote the Falmouth Board of Education complaining of slander, harassment and discrimination against their son and family, and requesting that all allegations about their son be deleted from his permanent educational records. *See* Pls.' Ex. 1 (Docket Item 29). The Chair of the Fal-

mouth School Board responded accordingly, indicating that the primary thrust of the letter was in regards to the content of the educational records. *See* Pls.' Ex. 2 (Docket Item 29). He indicated a possible remedy for this issue as well as described a "number of avenues" for dealing with allegations of harassment and discrimination. *Id.* This exchange was not related to any remedies under the IDEA.

and 1986 (Counts IV, V, and VI). These are the statutes commonly invoked to protect constitutional rights. Exhaustion of administrative remedies is not ordinarily required before filing a lawsuit under these statutes. *See, e.g., Patsy v. Bd. of Regents of the State of Florida,* 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (interpreting section 1983). When Congress first enacted the IDEA (formerly known as the Education of the Handicapped Act), however, the United States Supreme Court held that it supplanted section 1983 for cases involving disabled schoolchildren. *See Smith v. Robinson,* 468 U.S. 992, 1011–12, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). Congress quickly changed the statute to alter that result, by adding this language:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities.

20 U.S.C. § 1415(*l*) (2000). If the new language had stopped there, the plaintiffs would be able to proceed on their federal claims (sections 1983, 1985, 1986, the equal protection clause of the U.S. Constitution, and Section 504 of the Rehabilitation Act of 1973). But the statute went on to add the following additional language:

> *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(*l*) (emphasis added). The "procedures under subsections (f) and (g)" are due process hearings before state or local educational agencies and appeals before state educational authorities. In my April 30th Order, I quoted at length from First Circuit opinions that make clear that this language means just what it says: if the relief is available under the IDEA, it doesn't matter that the lawsuit is brought under a different federal statute or constitutional provision. Administrative remedies still must be exhausted. *See Rose v. Yeaw,* 214 F.3d 206, 209–10 (1st Cir.2000) ("[t]his requirement applies even when the suit is brought pursuant to a different statute so long as the party is seeking relief that is available under subchapter II of IDEA"); *Frazier v. Fairhaven Sch. Comm.,* 276 F.3d 52, 64 (1st Cir. 2002) (requiring exhaustion even when seeking money damages). As stated in *Weber v. Cranston Public School Committee,* 245 F.Supp.2d 401, 406 (D.R.I.2003) (emphasis added), "The availability of concurrent relief pursuant to statutes other than the IDEA … does not override the IDEA's exhaustion requirement, *which applies to all claims requesting relief that is available under the IDEA, whether or not they invoke that statute.*" Thus, dropping the IDEA claim from the Second Amended Complaint actually makes no difference to the outcome, if this family is seeking relief that is available under the IDEA and if the due process hearing procedures are available to them.

■ The relief this family seeks is restoration of playground privileges to the child and, with the new Second Amended Complaint, damages. Restoration of playground privileges is certainly relief available under the IDEA. The privileges were established at a PET meeting; they were withdrawn by school officials; their withdrawal was reviewed at another PET meeting; and the parents had been informed of the procedural safeguards included in the Maine Special Education

Regulations that were promulgated pursuant to the IDEA. So far as the new claim for damages is concerned, the First Circuit has explicitly held that exhaustion is still required before damages can be pursued. *See Frazier*, 276 F.3d at 64.

■■■ Were procedures available that satisfied 20 U.S.C. § 1415(f) and (g)? Those subsections entitle aggrieved parties to seek a due process hearing and appeal the finding of such a hearing to the state education agency. Under Maine statutes and the Maine Special Education Regulations, home schooling parents are entitled to file a written complaint with the Commissioner of the Maine Department of Education alleging that school officials are not complying with state or federal laws regarding the education of disabled students. *See* 20-A M.R.S.A. § 7206(1) (Supp.2003) ("An interested party may file with the commissioner a written complaint alleging that a school administrative unit . . . serving exceptional students has failed to comply with this chapter."); Me. Dep't of Educ., 05–071 CMR 101–4.7(G), 13.5 ("An . . . individual may file a written complaint with the Commissioner alleging that a school administrative unit . . . has failed to comply with State or Federal law regarding the identification, evaluation, placement or the provision of a free appropriate public education to a student with a disability."). Following the filing of such a complaint, the commissioner initiates and completes an investigation and written report. *See* 20-A M.R.S.A. § 7206(2). The investigator may carry out an independent on-site investigation; will provide the complainant the opportunity to submit additional information; will review all relevant information and make a preliminary independent determination as to whether the school is violating a requirement of the regulations; may convene a complaint resolution meeting to discuss preliminary findings and develop a proposed resolution to the complaint; and will transmit a written decision to the Department that addresses each allegation in the complaint. Me. Dep't of Educ., 05–071 CMR 101–13.5. It is undisputed that the parents declined to file a complaint. *See* Crowell Aff. ¶ 15 (Docket Item 27).

Initially I had been troubled that under the Maine Special Education Regulations a written complaint concerning a home-schooled student did not appear to be subject to a due process hearing with the local educational agency. *See* Me. Dep't of Educ., 05–071 CMR 101–4.7(G). But at oral argument, the defendants' lawyer pointed me to 20-A M.R.S.A. § 7206(4). That statute provides that within 30 days of receiving the investigation report, a parent can request a due process hearing so as to challenge the report. Thus, Maine does provide the due process hearing mandated by 20 U.S.C. § 1415(f).[2] The plaintiffs therefore are required to exhaust these administrative remedies before pursuing their federal claims.

I also find that plaintiffs do not meet any exceptions to the exhaustion requirement. I discussed those exceptions in my April 30th Order and add the following. It would not have been futile to seek relief from the appropriate state administrative agency in November 2003, when the suspension first occurred.[3] I assess futility

---

**2.** "Whenever a complaint has been received . . . the parents involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1).

**3.** Arguably, had plaintiffs initiated complaint proceedings, the school would have been required to continue permitting use of the play-

and irreparable harm as of that date, not now, when the end of the school year is imminent. I therefore conclude that, notwithstanding the Second Amended Complaint, the plaintiffs failed to exhaust their administrative remedies, and their claims arising under federal law must be dismissed pursuant to 20 U.S.C. § 1415(*l*).

There is a reason for the exhaustion requirement. The question here is whether playground privileges are appropriate for this home-schooled nine-year-old or whether he has been discriminated against. According to the court of appeals:

> The IDEA's administrative machinery places those with specialized knowledge—education professionals—at the center of the decisionmaking process, entrusting to them the initial evaluation of whether a disabled student is receiving a free, appropriate public education. . . .
>
> . . . . [T]he provision of judicial review is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." . . . Allowing plaintiffs to bypass the IDEA's administrative process en route to state or federal court disrupts this carefully calibrated balance and shifts the burden of factfinding from the educational specialists to the judiciary. That phenomenon is directly at odds with the method of the IDEA: "[t]o allow parents to come directly to federal courts will render the entire scheme [of the IDEA] nugatory."

*Frazier*, 276 F.3d at 60–61 (citations omitted).

ground until the complaint was resolved pursuant to the "stay put" provisions of the

CONCLUSION

The defendant's Motion to Dismiss Count IV (42 U.S.C. § 1983), Count V (42 U.S.C. § 1985(3)), Count VI (42 U.S.C. § 1986), Count VII (29 U.S.C. § 794(a)) and Count VIII (Equal protection clause of the U.S. Constitution) is GRANTED. Count I (5 M.R.S.A. § 4601) and Count III (5 M.R.S.A. § 4592) are REMANDED to state court.

SO ORDERED.

Maine Special Education Regulations. *See* Me. Dep't of Educ., 05–071 CMR 101–12.12.